```
                        FILED
                  2019 JUL 29 01:26 PM
                      KING COUNTY
                  SUPERIOR COURT CLERK
                        E-FILED
                CASE #: 19-2-19900-8 SEA
```

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| JOHN STEWART<br><br>Plaintiff,<br><br>v.<br><br>PROMETRIC, LLC, a Delaware Corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL OF TWELVE DEMANDED** |

COMES NOW Plaintiff, and states and alleges the following facts and causes of action against the above-named Defendant:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter. RCW 48.30.015.

2. Venue is proper in King County under RCW 4.12.020 because the cause of action arose in King County.

3. Venue is also proper in King County under RCW 4.12.025 because the Defendant transacted business in King County at the time the cause of action arose.

## PARTIES

4. Plaintiff John Stewart is a Washington resident.

5. Defendant Prometric, LLC, is Delaware corporation doing business in the State

COMPLAINT - 1

MALONEY O'LAUGHLIN, PLLC
200 W. MERCER STREET, STE. 102
SEATTLE, WA 98119
(206) 513-7485

of Washington with its principal place of business in Baltimore, Maryland. Prometric is an employer under the Washington Law Against Discrimination ("WLAD"), RCW 49.60. Prometric provides places of public accommodation under the WLAD, RCW 49.60, where it provides a service, in the form of test administration, in return for a fee from test takers.

**FACTUAL BACKGROUND**

6. Plaintiff John Stewart worked as a Nurse Aide Evaluator ("NAE") for Prometric Inc., from May 26, 2015, until he was terminated on September 29, 2019.

7. Prometric is a multinational company specializing in computer-based testing. The Washington State Department of Health ("DOH") contracts with Prometric to provide testing for applicants seeking to become licensed Home Care Aides ("HCA") in the State of Washington.

8. Prometric provides multiple places throughout the State of Washington where it administers testing to applicants. Those applicants are required to pay a fee to Prometric to take the test, which was designed by Prometric.

9. Stewart's job duties at Prometric included administering practical and written examinations for persons seeking to become licensed HCAs.

10. Stewart worked for Prometric between three to four days a week, traveling to several sites in the Seattle area to administer the state-mandated exam for licensure as an HCA. The written exams are administered in multiple languages.

11. In January 2018, Stewart noticed that Somali-language HCA candidates seemed to be failing the knowledge exam at unusually high rates. He shared this information with his coworkers and management, and others echoed his concern. Other test evaluators confirmed they also had noticed discrepancies with the Somali test.

COMPLAINT - 2

MALONEY O'LAUGHLIN, PLLC
200 W. MERCER STREET, STE. 102
SEATTLE, WA 98119
(206) 513-7485

12. On March 14, 2018, Stewart sent his manager, Corwin Sample, an email stating, among other things, that he had received a complaint from a Somali candidate that the content of the Somali translation was confusing and sometimes made no sense at all. Stewart further stated that he suspected that the "Somali knowledge test is lousy and unfair."

13. On March 15, 2018, Stewart's manager, Corwin Sample, asked him to find out more about the pass rates and any complaints.

14. On March 23, 2018, Stewart received an email from an Operations Service Specialist with the Pass/Rate reports from March 1, 2017, to March 1, 2018, showing the Exam passage rates for Somali HCA candidates at 72.12%. The English-speaking HCA candidates had a passage rate of 98.61%. With two other exceptions (Laotian and Samoan), most of the other non-English speaking HCA candidate groups had passage rates of 86% or above. Stewart reported back to Sample with this information.

15. In April 2018, the issue came up in a conference call. Stewart and some of his coworkers raised the possibility of looking into a re-translation of the Somali Knowledge Test. The response from management was that it would not happen because it was too expensive.

16. In July, Stewart called the Washington State Department of Health ("DOH") about the pass-rate discrepancies. Stewart complained to DOH that the test was fundamentally unfair to Somali-speaking test takers.

17. Shortly thereafter, sometime around July 24, 2018, Stewart was informed that he was suspended for two weeks. He was told in a conference call with Sample and Pam Thompson and that the reason for the suspension was contacting a client (DOH) without permission and that he was not going through the proper channels.

COMPLAINT - 3

MALONEY O'LAUGHLIN, PLLC
200 W. MERCER STREET, STE. 102
SEATTLE, WA 98119
(206) 513-7485

18. After the two-week suspension, Stewart resumed his job. He inquired if there was any documentation or further action pending about the suspension and was told there was none.

19. On August 14, Stewart sent an email to Prometric management complaining of the discrepancy in the pass rates between Somali test takers (72%) and English-speaking test takers (98%). Stewart stated that he believed the large discrepancy to be due to a problematic translation and that if he was right, the discrepancy in pass rates meant that the test was "fundamentally unfair."

20. In response to Stewart's email, he was emailed a "Final Written Warning" in the form of letter dated August 24, 2018, from Prometric attorney Allison Mulford. According to Mulford, Stewart was given the written warning because "he was not able to drop the issue" of discrimination with the Somali test.

21. In the warning, Stewart was instructed to "cease and desist" gathering data, documents, and materials about the Somali test. The letter stated that the issues he had raised "are of grave concern in relation to your duties as a proctor for Prometric." Mulford further stated that the DOH believed that Stewart had a "perceived conflict of interest" in his duties as a proctor and that Prometric shared that concern.

22. The warning also referenced an earlier written warning from December 2017 that dealt with an entirely separate issue of Stewart assisting a candidate with an accommodation during testing.

23. The warning further stated that the only materials Stewart should possess related to his duties as a proctor are the materials in the Nurse Aide Evaluator Manual. With the exception of the manual, Mulford directed Stewart to return everything that is "either Prometric or WA DOH property, confidential or proprietary material, or research/data that [he had]

COMPLAINT - 4

compiled from the same including but not limited to data, documents and/or materials over to Pam Thompson by Monday, August 27th." Alternately, Mulford stated that Stewart could certify that he had destroyed such materials and/or information. The letter did not reference conducting a search through emails for responsive documents and Stewart did not believe that was required.

24. Stewart did stop compiling information related to the Somali exam. He deleted such information from his computer and emailed Thompson sometime around August 30, 2018, indicating that he had destroyed relevant materials.

25. On September 16, 2018, Stewart forwarded emails related to the Somali examination from his Prometric email account to his personal email account because he believed Prometric was engaging in a cover-up of its discrimination. Because he had blown the whistle, he believed Prometric would try to get rid of him and he believed the information could be relevant evidence that could be used in a future lawsuit regarding the test and that Prometric might try to destroy it.

26. Stewart did not believe he was violating any Prometric policies because he was not sharing the information with anyone outside the company. Stewart only sent the information to himself and another Prometric employee. Stewart was still an employee when he sent the emails.

27. Upon information and belief, the information related to pass rates is not confidential or proprietary information, but is public record maintained by the DOH and subject to the open records law. None of the documents had previously been marked as confidential or proprietary by Prometric.

COMPLAINT - 5

MALONEY O'LAUGHLIN, PLLC
200 W. MERCER STREET, STE. 102
SEATTLE, WA 98119
(206) 513-7485

28. Within a few days of forwarding the emails to himself, Stewart sent Prometric management an email again complaining about the test being discriminatory toward Somali-speaking test takers.

29. On September 29, 2018, Stewart found that he was locked out of his work email account. Stewart called Corwin Sample and, after a pause, Pam Thompson came on the line. Thompson told Stewart that he had been terminated because he shared work emails outside of the company and for lying about whether he deleted information related to the Somali test.

30. Prometric's stated reasons for his termination were a pretext for the real reason: his complaints about the discriminatory nature of Prometric's Somali-language exam.

## COUNT I – WLAD RETALIATION

31. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

32. Stewart engaged in protected activity under the WLAD by complaining about national origin discrimination against Somali test-takers in a place of public accommodation provided by Prometric.

33. Stewart had a good faith, reasonable belief that Prometric was discriminating against Somali test-takers based on their national origin.

34. Prometric retaliated against Stewart because he engaged in this protected activity by suspending him from work, disciplining him with a final written warning, and terminating his employment.

35. As a direct and proximate cause of Prometric's retaliatory actions, Stewart has suffered damages, including lost wages and emotional distress.

COMPLAINT - 6

MALONEY O'LAUGHLIN, PLLC
200 W. MERCER STREET, STE. 102
SEATTLE, WA 98119
(206) 513-7485

36. At all times mentioned herein, before and after the above-described perpetrators were agents, servants, and employees of Prometric and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Prometric and/or their actions were ratified by Prometric, thus making Prometric liable for said actions under the doctrine of respondent superior.

### REQUEST FOR RELIEF

37. Plaintiff requests all damages allowable under Washington law, including the following:

    a. Compensatory damages, including lost wages and emotional distress damages;

    b. Pre- and post-judgment interest;

    c. Attorney's fees, costs, and expenses;

    d. Any and all other and further relief this Court deems just and proper.

Dated this 29th day of July 2019.

Respectfully submitted,

By: /s/ Matt J. O'Laughlin
Matt J. O'Laughlin, WSBA 48706
MALONEY O'LAUGHLIN, PLLC
200 W. Mercer Street, Ste. 102
Seattle, Washington 98119
Tel: 206.513.7485
Fax: 206.260.3231
matt@pacwestjustice.com

ATTORNEY FOR PLAINTIFF

COMPLAINT - 7

MALONEY O'LAUGHLIN, PLLC
200 W. MERCER STREET, STE. 102
SEATTLE, WA 98119
(206) 513-7485

Exhibit A, Page 10 of 22